MARC A. PILOTIN
Regional Solicitor
BORIS ORLOV
Counsel for Wage and Hour
CHARLES SONG (CSBN 204497)
Senior Trial Attorney
VICTORIA YEE (CSBN 326366)
Trial Attorney
UNITED STATES DEPARTMENT OF LABOR
350 S. Figueroa Street, Suite 370
Los Angeles, CA 90071-1202
Telephone: (202) 961-4632
Fax:  (213) 894-2064
song.charles.c@dol.gov
*Attorneys for Plaintiff Martin J. Walsh
Secretary of Labor*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martin J. Walsh,<br>    Secretary of Labor,<br>        United States Department of Labor,<br><br>                              Plaintiff,<br>        v.<br><br>VH Harvesting, an Arizona LLC; T & K Feeds, Inc., an Arizona corporation; Preston Van Hofwegen, an individual.<br><br>                              Defendants. | Case No. 2:22-cv-01805-DJH<br><br>**SUPPLEMENT TO SECY'S MOTION AND APPLICATION IN SUPPORT OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** |

The Secretary supplements [ECF No. 2] Secretary's Application and Memorandum in Support of Temporary Restraining Order and Order to Show Cause. The Secretary renews his application for a TRO as (1) he is likely to succeed on the merits, which is sufficient to justify preliminary injunctive relief, <u>see</u>, <u>infra</u>, 2 at n.2 ; (2) Defendants need to be enjoined prevent further violations of the H-2A visa program; and (3) T & K Feeds, Inc. ("TK") is a joint employer of the H-2A workers and is not allowed to "lease" them from VH Harvesting.

VH Harvesting ("VH") brought in 26 workers on H-2A visas. TK claims that VH "leased" six of these workers to TK. VH sent the remaining 20 workers to drive semi-trucks mostly out of state. According to workers, VH moves these workers back and forth between TK and out of state assignments. For example, the workers were in Texas and Oklahoma as recently as two weeks ago and then some were moved to TK. Even if TK agrees to come into compliance, VH must be enjoined from committing H-2A violations because it has workers performing non-TK assignments, most critically forcing them to operate VH's own unsafe trucks.

Defendants have failed to provide any admissible evidence to rebut the Secretary's evidence of serious H-2A violations contained in the TRO Application. Defendants VH and Van Hofwegen have not filed a response. Defendant TK's response only had representations of counsel but no admissible evidence. In fact, on October 21, 2022, the very day of the hearing, the workers drove about 12 hours for TK, contrary to TK's representations to the Court and the Secretary.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    Secretary is likely to succeed on the merits that Defendants are in violation of the H-2A program.**

Defendants VH and Van Hofwegen did a bait and switch with their H-2A application. VH represented to the U.S. Department of Homeland Security and U.S. Department of Labor ("DOL") under oath that they needed foreign workers to perform temporary agricultural work because they could not find enough local workers and that

employing foreign workers would not adversely affect U.S. workers' wages and working conditions. See 8 U.S.C. §§1184(c)(1), 1188(a)(1). However, as discussed in [ECF No. 2] Secretary's Motion for a Temporary Restraining Order and Preliminary Injunction ("Secretary's TRO"), VH and Van Hofwegen are not only flagrantly violating their H-2A job contract, they are also endangering lives by requiring the foreign workers to drive dangerous semi-trucks interstate for an unsafe number of hours when they are only authorized to do intrastate agricultural work for VH in the fields. ECF No. 2; Declaration of Kristina Espinoza ("Espinoza Decl.") at ¶¶4-13 & Exs. 2A-G.

Crucially, Defendants have not disputed that they have violated the H-2A program. For their part, VH and Van Hofwegen have not disputed any of the material facts that led the Secretary to seek a TRO. As for TK, it has represented to the Court that they are "leasing" the H-2A workers and are not the bad actor. See ECF No. 8. However, TK has violated the H-2A program, including having workers drive unsafe hours even on the day of the TRO hearing. Espinoza Decl. at ¶17 & Ex. 2G. Further, INA and DHS regulations prohibit an H-2A employer from "leasing" H-2A workers to another employer under these circumstances. See infra §III; see also 8 U.S.C. §1184(c); 8 U.S.C. §1188(a); 8 C.F.R. §214.2(h)(1) & (h)(5); 20 C.F.R. §655.130.

The Secretary's TRO seeks to prevent continuing violations—and potential injuries—from occurring by enjoining Defendants from violating the law. Indeed, in addition to not contesting the Secretary's evidence, Defendants have offered no evidence showing that they will comply with the H-2A program.

**II. A preliminary injunction protects the workers and the public from irreparable harm, the balance of equities tips in the Secretary's favor, and it is in the public interest.[1]**

---

[1] The INA authorizes the Secretary to seek injunctive relief "as may be necessary to assure employer compliance with terms and conditions of employment" under the H-2A program. 8 U.S.C. § 1188(g)(2). When preliminary injunctive relief is sought to prevent the violation of a federal statute that specifically provides for injunctive relief, the moving party does not need to satisfy the standard requirements for equitable relief. Trailer Train

VH Harvesting brought in 26 foreign workers. TK is currently housing 8 of these workers in Maricopa, Arizona and claims to be "leasing" 6 of the 8. Espinoza Decl. at ¶7. At the time of the workers' declarations they were still driving unsafe semi-trucks for an unlawful number of hours for all Defendants. Id. at ¶11. VH moves these workers at will and as recently as two and three weeks ago had the workers perform work in Texas and Oklahoma. Id. at ¶12. Therefore, even if TK agrees to comply with the H-2A regulations, the violations will continue if VH is not enjoined from violating H-2A regulations because it can and has directed workers to travel interstate at a moment's notice for non-TK assignments. Id.

At the October 21, 2022 hearing, TK represented that upon learning about the violations that TK reduced the work hours. However, on the very day of the hearing, TK had employees drive excessive hours. Espinoza Decl. at ¶17 & Ex. 2G. Workers started work that day at 6:30 a.m. and were still driving semi-trailers doing pick-up and deliveries for TK Feed as of 6:20 p.m. Id. This was a violation of the maximum driving time of 10 hours for workers under H-2A regulations. See 20 C.F.R. §§ 655.122(h)(4), 655.135(e); 29 C.F.R. § 500.105(b)(4). It was only at around 6:45 p.m. that TK told the workers that their work would temporarily be put on pause. Id.

**III.   The Secretary made extensive efforts to obtain compliance without seeking this Court's intervention.**

The Secretary's TRO seeks to protect the integrity of the judicial fact-finding process, enforcement of H-2A visa regulations, and the public's health, safety, and working conditions from irreparable harm. On October 12, 2022, which is over a week before the Secretary filed his TRO, the Secretary notified VH about the violations. Espinoza Decl. at ¶¶13-14. On October 12, 2022, Investigator Espinoza spoke with Van

---

Co. v. State Bd. of Equalization, 697 F.2d 860, 869 (9th Cir. 1983); Perez v. J&L Metal Polishing, Inc., No. SACV15-2957 PSG (JCGx), 2016 WL 7655766, at *3 (C.D. Cal. May 9, 2016). Thus, the Secretary does not need to establish the inadequacy of legal relief by showing likelihood of irreparable harm for the Court to issue a preliminary injunction.

1  Hofwegen and conducted a housing inspection on October 13, 2022. Id. at ¶13. Espinoza
2  also told Van Hofwegen that she wanted to inspect all the vehicles including the semi-
3  trucks that workers used, but on October 14, 2022, found that he had moved some of the
4  semi-trucks from their usual location. Id. at ¶14. Further, as of October 24, 2022, housing
5  conditions had not been resolved. For example, several workers were sleeping on air
6  mattresses on the ground, which did not allow for at least 50 square feet of floor space per
7  occupant. 29 C.F.R § 1910.142(b)(2)). Id. at ¶13 & Ex.2E.

8        On October 17, 2022, even though it is not required for a TRO, the Secretary began meeting and conferring with VH about stipulating to come into compliance prior to filing the TRO. Declaration of Charles Song ("Song Decl") at ¶¶2-5. Although Mr. Van Hofwegen initially agreed to voluntarily come into compliance on October 17, 2022, received a draft stipulation and complaint, and retained counsel on October 18, 2022, VH and Mr. Van Hofwegen failed to comply or represent to the Secretary or the Court that they would comply. Id. at Ex. 1A. On October 19, 2022, the Secretary notified TK about the violations. Id. at ¶6. TK also failed to provide any evidence of compliance.[2] Id. at ¶7.

16        There is no evidence that absent a preliminary injunction Defendants will come into compliance with the H-2A work order. Instead, all the evidence shows a brazen disregard for the H-2A regulations, evasion, or delay. Defendants have no legitimate interest in requiring the workers to drive dangerous semi-trucks for 12 to 14 hours a day, 7 days a week; not providing safe and healthy living conditions; failing to provide workers meals or access to kitchen facilities; and threatening workers when they speak up about workplace conditions. Without a court order, Defendants are likely to continue their dangerous practices and hurt the public interest.

24  //
25  //

---

[2] As of filing this Supplement, the Secretary is in discussions with TK about a stipulation. See Declaration of Charles Song at ¶7.

**III.   TK Feed is a joint employer and is violating the H-2A visa program.**

As requested by the Court at the October 21, 2022 hearing, the Secretary also submits additional briefing that the purported "leasing" arrangement between TK and VH violates the H-2A. The INA and DHS regulations govern in this circumstance. These authorities require that an H-2A employer receive a temporary labor certification from DOL and then petition DHS to hire H-2A workers; these authorities further prohibit an H-2A employer from "leasing" H-2A workers to another employer. See 8 U.S.C. §1184(c)(the admission of nonimmigrant workers, including H-2A workers, are permitted only upon approval of the "petition of the importing employer"); 8 U.S.C. §1188(a)(emphasis added)(providing that "[a] petition to import an alien as an H-2A worker (as defined in subsection (i)(2) of this section) may not be approved by the Attorney General unless *the petitioner* has applied to the Secretary of Labor for a" labor certification); 8 C.F.R. §214.2(h)(1) (emphasis added) (DHS regulations provide that "[u]nder section 101(a)(15)(H) of the Act, an alien may be authorized to come to the United States temporarily to perform services or labor for, or to receive training from, an employer, *if petitioned for by that employer*."); see also 8 C.F.R. §214.2(h)(5); 20 C.F.R. §655.130.

Here, VH is the petitioning employer and is therefore responsible for compliance with the H-2A program's requirements. Espinoza Decl. at ¶3 & Exs. 2A-D; see also 20 C.F.R. §§655.130, 655.135.  VH is not relieved of its responsibilities by purporting to "lease" its H-2A workers to TK, which cannot "lease" the workers in any event. Id.  But although TK is not an approved employer on the relevant H-2A labor certification, it is responsible for the violations here under a "joint employer" liability theory, which rests on the common law of agency. See 20 C.F.R. § 655.103(b); see also Garcia-Celestino v. Ruiz Harvesting, Inc., 843 F.3d 1276, 1289 (11th Cir. 2016). An "employer" under the regulations is defined, in relevant part, as a person that "[h]as an employer relationship (such as the ability to hire, pay, fire, supervise or otherwise control the work of employee) with respect to an H-2A worker[.]" Id.  Where such a relationship is shown between H-

2A workers and two or more employers, "those employers will be considered to jointly employ that worker." 20 C.F.R. § 655.103(b). "[E]ach employer in a joint employment relationship bears all the obligations of an employer." See 2010 Final Rule, 75 Fed. Reg. at 6886 (responding to comment requesting that the definition of corresponding employment be expanded to include joint employment). See Garcia-Celestino v. Consol. Citrus Ltd., No. 2:10–cv–542, 2014 WL 103434, at *6 (M.D. Fla. Jan. 10, 2014) (discussing changes in H-2A regulatory definitions which omitted "suffer or permit" language from the definition of employer and specified that employee is defined under the general common law of agency).

In its response to the TRO, TK admitted that it is has control over the workers from VH. See ECF No. 8 at 2. TK is housing the workers; directing the workers about their work schedule and type of work; and can change their pay and hours. ECF No. 2 at 17; Espinoza Decl. at ¶15 & Ex. 2-F Therefore, TK has joint employer liability, acting in violation of the H-2A program, and must be enjoined from further violations.

## IV.   Conclusion

For the foregoing reasons, the Secretary respectfully requests that the Court enter against Defendants a temporary restraining order and an Order to Show Cause why a Preliminary Injunction should not be entered against them.

Dated:  October 24, 2022

Respectfully submitted,
SEEMA NANDA
Solicitor of Labor

MARC A. PILOTIN
Regional Solicitor

BORIS ORLOV
Counsel for Wage and Hour

VICTORIA YEE
Trial Attorney

/s/ *Charles Song*
CHARLES SONG
Senior Trial Attorney

Attorneys for the Plaintiff