**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martin J Walsh, | No. CV-22-01805-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| VH Harvesting LLC, et al., | |
| Defendants. | |

On October 20, 2022, Plaintiff Martin J. Walsh, the United States Department of Labor Secretary, ("Secretary") applied for a Temporary Restraining Order ("TRO") seeking to enjoin Defendants VH Harvesting ("VH"), T & K Feeds, Inc. ("T & K"), and Preston Van Hofwegen ("Van Hofwegen") from violating their obligations under the H-2A program. (Doc. 2 at 1–2). The Court initially denied, without prejudice to renew, the Secretary's request for a TRO during a telephonic hearing with the parties on October 21; the Court then set a Status Conference on the matter for October 25. (Doc. 11). On October 25, the Secretary and T & K stipulated to the entry of a preliminary injunction against T & K (Doc. 14), which the Court granted. (Doc. 17). Prior to the Status Conference, the Secretary also renewed and supplemented his TRO application and motion for preliminary injunction (Doc. 13). At the Status Conference, the Court set a hearing on the Secretary's Motion for Preliminary Injunction for November 18, 2022[1] and found cause to enter a TRO against Defendants VH and Van Hofwegen in the interim. (Doc. 16). The following is an

---

[1] At the Status Conference, the parties agreed to consolidate a trial on the merits with the preliminary injunction hearing.

Order formalizing the Court's oral ruling granting the Secretary's TRO.

## I. Background

Defendant VH applied for a temporary employment certification from the Department of Labor in December 2021, asking permission to hire and obtain H-2A visas for foreign agricultural workers. (Doc. 2-3 at ¶ 3). VH's application was granted and VH obtained an H-2A Agricultural Clearance Order ("Clearance Order") on December 22, 2021 (*Id*. at 7–21).[2] Preston Van Hofwegen, the owner of VH, signed the Clearance Order. (*Id*. at 14). The Clearance Order authorized an employment period of March 1, 2022 to December 1, 2022 and listed the following job duties to be performed by the H-2A workers:

> [o]perates self-propelled custom class harvesting machines to harvest a variety of grain and oilseed silage crops such as wheat, alfalfa, milo; adjusts settings of harvesting machinery; drives truck to transport crops to storage area; drives truck to move harvesting machines between worksites; services machinery, and makes in field repairs; driving farm vehicle; minor daily and incidental upkeep to equipment and worksite.

(*Id*. at 7). The Clearance Order further outlined that the H-2A workers would work 48 hours per week with a wage offer of $14.79 per hour to be paid biweekly. (*Id*.) In signing the Clearance Order, VH and Van Hofwegen agreed to comply with all codes and regulations referred to in the Clearance Order, including 20 C.F.R. 653, subpart F and 20 C.F.R. 655, Subpart B. (*Id*. at 11–14). These regulations govern, among other things, transportation, housing, meal, and wage requirements under the H-2A program.

VH ultimately brought 26 workers from Mexico to the United States on H-2A visas. (Doc. 13 at 2). VH thereafter entered into an agreement with T & K, in which it agreed to lease six of the H-2A workers to T & K. (*Id*.)

The Secretary brought this action pursuant to 8 U.S.C. § 1188(g)(2), which authorizes the United States Secretary of Labor to seek injunctive relief to assure employer compliance with the H-2A program. Through an ongoing investigation, the Secretary alleges he has "found illegal and potentially deadly working conditions at VH." (Doc. 2 at

---

[2] Defendant VH Harvesting is bound by the H-2A Agricultural Clearance Order for H-2A case No. H-300-21350-769065. (Doc. 2-3 at 7–21).

2). The Secretary further alleges Defendants are in violation of their H-2A employer obligations and the Clearance Order by (1) requiring H-2A workers to perform work not authorized by the Clearance Order; (2) requiring H-2A workers to drive inoperable semi-trucks for daily hours in excess of Federal standards; (3) housing H-2A workers in overcrowded and inadequate conditions; (4) failing to provide workers with three meals per day or access to kitchen facilities; (5) failing to pay H-2A workers adequate wage rates; and (6) threatening to call law enforcement or immigration officials on H-2A workers who complain about workplace conditions. (Doc. 1 at ¶¶ 7–13).

## II.    Legal Standard

The standards governing temporary restraining orders and preliminary injunctions are "substantially identical." *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (citation omitted). Preliminary injunctive relief is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm if injunctive relief were denied, (3) that the equities weigh in the plaintiff's favor, and (4) that the public interest favors injunctive relief. *Id.* at 20. The movant carries the burden of proof on each element of the test. *See Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980). The last two factors merge when the government is a party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

The Ninth Circuit also employs a "sliding scale" approach to preliminary injunctions, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The issuance of a preliminary injunction may be appropriate when there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. "[C]ourts 'must balance the competing claims of injury

and must consider the effect on each party of the granting or withholding of the requested relief,'" and should be particularly mindful, in exercising their sound discretion, of the "public consequences in employing the extraordinary remedy of injunction." *Id*. at 24 (citations omitted).

**III.   Discussion**

The Secretary's Temporary Restraining Order "seeks to prevent continuing violations — and potential injuries — from occurring" by enjoining VH and Van Hofwegen from violating the laws and regulations implemented by the H-2A program. (Doc. 13 at 3). The Court will grant the Secretary's renewed Motion and issue a Temporary Restraining Order against Defendants VH and Van Hofwegen (collectively, "Defendants") because consideration of the *Winter* factors presently weigh in the Secretary's favor.

    **1.   Likelihood of Success on the Merits**

In October 2022, the Secretary initiated an investigation into the living and working conditions of Defendants' H-2A workers.[3] (Doc. 13-3 at 3). The Secretary argues that Defendants have violated and continue to violate their obligations under the H-2A program by assigning work outside the scope of the Clearance Order; failing to adhere to applicable transportation, housing, meal, and wage requirements; and threatening H-2A workers who complain about workplace and living conditions.

Although not expressly stated, the Court agrees with the Secretary that the authorities governing the H-2A program in terms of scope of work imply that an H-2A employer is prohibited from "leasing" H-2A workers to another employer.[4] (Doc. 13 at 6).

---

[3] As part of the investigation, a U.S. Department of Labor Investigator interviewed Defendants' H-2A workers, conducted a housing inspection on October 13, 2022, and attempted to conduct a vehicle inspection on October 14, 2022. (Doc. 13-3 at 3–5).

[4] See 8 U.S.C. §1184(c) (importing any nonimmigrant workers, including H-2A workers, are permitted only upon the Attorney General's approval of the "petition of the importing employer"); 8 U.S.C. §1188(a) ("A petition to import an alien as an H-2A worker (as defined in subsection (i)(2) of this section) may not be approved by the Attorney General unless *the petitioner* has applied to the Secretary of Labor for a labor certification) (emphasis added); 8 C.F.R. §214.2(h)(1) ("Under section 101(a)(15)(H) of the Act, an alien may be authorized to come to the United States temporarily to perform services or labor

At the Status Conference, T & K agreed that such an arrangement is likely prohibited under the H-2A program and explained this is one of the reasons it has stipulated to no longer using VH's H-2A workers.[5] Moreover, the Clearance Order does not make any mention of leasing H-2A workers, and Defendants have not cited authority to enter into such arrangements. In total, the Court finds the Secretary is likely to succeed on his claim that Defendants are employing H-2A workers in work not approved by the Clearance Order.

In terms of transportation, the Clearance Order requires that "employer-provided transportation will comply with all applicable Federal, State, or local laws and regulations" and, at a minimum, provide "the same transportation safety standards, driver licensure, and vehicle insurance as required under 29 U.S.C. § 1841 and 29 C.F.R. § 500.105 and 29 C.F.R. §§ 500.120 to 500.128." (Doc. 2-3 at 12). The Secretary requested to directly inspect all VH vehicles but alleges Defendants had moved some of the vehicles from their usual location. (Docs. 13 at 5; 13-3 at 5). The Secretary has therefore provided documentation by the Texas Highway Patrol issuing ten citations[6] on a VH semi-truck in violation of Federal Motor Carrier Safety Regulations. (Doc. 2-6 at 12). The Secretary further alleges the H-2A workers reported a multitude of vehicle deficiencies to their supervisors with no avail. (Doc. 2 at 5). These reports include missing motor brakes, oil leaks, and faulty trailer attachments. (Doc. 13-3 at 4). This evidence shows that the Secretary is likely to succeed on his transportation violation claim.

In terms of housing, the Clearance Order requires Defendants to provide the H-2A workers with housing that "complies with the applicable local, State, or Federal standards and is sufficient to house the specified number of workers requested through the clearance system." (Doc. 2-3 at 11). Defendants represented that employer-provided housing and

---

for, or to receive training from, an employer, if *petitioned for by that employer*.") (emphasis added); see also 8 C.F.R. §214.2(h)(5); 20 C.F.R. §655.130.

[5] It is unclear whether Defendants have entered into additional leases for its H-2A workers.

[6] According to the Texas Highway Patrol citation, the VH semi-truck had unsafe tires, a missing left front signal lamp, an inoperable right rear corner clearance lamp, improper windshields, and lacked inspection certificates and proper identification. (Doc. 2-6 at 12).

- 5 -

laundry facilities would be in compliance with the OSHA Housing Standards specified in 29 C.F.R. § 1910.142.[7] (*Id*. at 21). Yet the Secretary's investigation revealed several H-2A workers were sleeping on air mattresses stacked next to each other on the ground. (Doc. 13-3 at 34–35). This arrangement did not allow for at least 50 square feet of floor space per occupant, as required by 29 C.F.R. § 1910.142(b)(2). (Doc. 13 at 5). Thus, the Secretary is likely to succeed on his housing violation claim.

In terms of meals, the Clearance Order requires Defendants to "provide each worker with three meals a day or furnish free and convenient cooking and kitchen facilities to the workers that will enable the workers to prepare their own meals." (Doc. 2-3 at 11). Defendants elected to provide kitchen facilities so workers may prepare their own meals as well as transportation once a week to ensure that workers had access to a grocery store. (*Id*. at 17). According to the Secretary's interviews with the H-2A workers, some nights the H-2A workers "had to sleep in the cab of their trucks which did not have kitchen facilities, heaters or air conditioners" and were unable to buy their own meals because they were paid late. (Doc. 13-3 at 4). Thus, the Secretary is likely to succeed on his meal violation claim.

In terms of wages, the Clearance Order outlined that the H-2A workers would work 48 hours per week — 8 hours per day, 6 days a week — with an hourly work schedule spanning 8:00 am – 5:00 pm. Defendants' wage offer was $14.79 per hour to be paid biweekly. (Doc. 2-3 at 7). However, the Secretary has provided documentation of the H-2A workers' driving logs, which indicate some workers worked 13–15 hours in a day, starting as early as 3:30 am and ending as late as 6:30 pm. (Doc. 2-8 at 14-17). These practices violate the maximum driving time of 10 hours for workers under H-2A regulations. 29 C.F.R. § 500.105(b)(4); *see also* 20 C.F.R. §§ 655.122(h)(4), 655.135(e). the Secretary further alleges his investigation revealed evidence that the H-2A workers are

---

[7] 29 C.F.R. § 1910.142 sets forth OSHA standards for temporary labor camps, including but not limited to the requisite conditions for adequate shelter; living quarters, water supply; toilet facilities, sewage disposal facilities; laundry, handwashing, and bathing facilities; lighting; refuse disposal; kitchen, dining hall, and feeding facilities; insect and rodent control; first aid, and responses to communicable disease.

not being paid the Federal minimum wage, prevailing wage rate, or adverse effect wage rate, and are rather being paid $100 to $150 per day. (Doc. 13-3 at 4). The Secretary also alleges reports of late or missing pay checks. (*Id.*) Thus, the Secretary is likely to succeed on his wage violation claim.

In terms of retaliation, 29 C.F.R § 501.4 states a person may not "intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate against any person who has" sought protections under the H-2A program. The Secretary alleges H-2A workers experienced threats from Defendant to call law enforcement or immigration officials on workers who complained about workplace conditions. (Docs. 2-4 at 10; 2-5 at 9). These claims are thus unsubstantiated beyond the Secretary's allegations and thus it is unclear whether the Secretary would be likely to succeed on this claim.

As pointed out by the Secretary, Defendants have not disputed any of the Secretary's alleged violations. In sum, the Secretary has met his burden in showing a likelihood of success on the merits of his claim that Defendants are violating their obligations under the H-2A program.

### 2. Likelihood of Irreparable Harm

To prevail on the second *Winter* factor, the Secretary must show a likelihood of irreparable harm if injunctive relief were denied. *Winter*, 555 U.S. at 20. the Secretary argues the absence of a Temporary Restraining Order would result in irreparable harm to him, the H-2A workers, and the general public.

First, Congress has indeed tasked the Secretary with ensuring employer compliance with the H-2A program. 8 U.S.C. § 1188(g)(2) provides that "[t]he Secretary of Labor is authorized to take such actions, including imposing appropriate penalties and seeking appropriate injunctive relief and specific performance of contractual obligations, as may be necessary to assure employer compliance with terms and conditions of employment under this section." *See also* 29 C.F.R. § 502.16. This authorizing language "reflects a congressional judgment that, if defied, would cause irreparable harm to the Secretary's ability" to ensure such employer compliance. *See Walsh v. Ahern Rentals, Inc.*, 21-16124,

2022 WL 118636 at *2 (9th Cir. Jan. 12, 2022) (holding that interference with the Secretary of Labor's ability to protect whistleblowers under the Surface Transportation Assistance Act of 1982 would result in irreparable harm to the Secretary).

Next, the H-2A workers would suffer irreparable harm if the Court did not issue a Temporary Restraining Order that required Defendants to comply with the H-2A program and Clearance Order. There is a significant safety risk in allowing the H-2A workers to drive unsafe, inoperable semi-trucks provided by Defendants for hours exceeding Federal standards. H-2A workers would also be forced to continue working under egregious transportation, housing, meal, and wage conditions that not only violate the H-2A program but endanger their safety, health, and welfare. Additionally, the H-2A workers would continue to be subjected to fear of retaliation by Defendants. See *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 938–39 (9th Cir. 1987) ("[A]llegations of retaliation for the exercise of statutorily protected rights represent possible irreparable harm far beyond economic loss.") (citing *Garcia v. Lawn,* 805 F.2d 1400, 1405–06 (9th Cir. 1986)).

Finally, there is a threat of irreparable harm posed to the public due to Defendant's alleged transportation violations. To allow drivers operating unsafe, inoperable semi-trucks for hours exceeding Federal standards not only poses a risk to the semi-truck drivers themselves, but to the other drivers on the road and greater general public. The Secretary has therefore met his burden in showing a likelihood of irreparable harm absence the Court's issuance of a Temporary Restraining Order.

### 3. Balance of Equities and the Public Interest

Because the last two factors merge when the government is a party, the court will consider together whether the balance of equities weigh in the plaintiff's favor and whether the public interest favors injunctive relief. *See Drakes Bay Oyster Co.*,747 F.3d at 1092; *see also Winter*, 555 U.S. at 20.  Here, they do.  Defendants would suffer little, if any, harm because a temporary restraining order "would merely require [them] to comply with the law." *Perez v. Howes*, 7 F. Supp. 3d 715, 729 (W.D. Mich. 2014), *aff'd sub nom. Perez v. D. Howes, LLC*, 790 F.3d 681 (6th Cir. 2015). The Court further views it is in the public

interest to order Defendants to comply with the very Clearance Order the Defendants have signed and bound themselves to, and to adhere to the applicable Federal Codes and Regulations referenced to in the Clearance Order. Thus, the Secretary has met his burden in meeting the last two *Winter* factors.

**IV.    Conclusion**

For these reasons, the Court grants the Secretary's Supplemental Motion and Application in Support of Temporary Restraining Order and Order to Show Cause Regarding a Preliminary Injunction and issues a Temporary Restraining Order against Defendants VH Harvesting, LLC and Preston Van Hofwegen.

Accordingly,

**IT IS HEREBY ORDERED** that the United States Secretary of Labor's Supplemental Motion and Application in Support of Temporary Restraining Order and Order to Show Cause Regarding a Preliminary Injunction (Doc. 13) is **granted**.

**IT IS FURTHER ORDERED** that Defendants VH Harvesting, LLC and Preston Van Hofwegen are enjoined and restrained from violating the H-2A Agricultural Clearance Order for H-2A case No. H-300-21350-769065 and the applicable Federal Codes and Regulations referenced therein, including but not limited to regulations concerning transportation, housing, meal, wage, and prohibited discrimination requirements.

**IT IS FURTHER ORDERED** that Defendants VH Harvesting, LLC and Preston Van Hofwegen must permit the United States Secretary of Labor's investigators to review those vehicles that are currently being used to transport loads not only in Arizona but across interstate lines. Defendants VH Harvesting, LLC and Preston Van Hofwegen shall grant the United States Secretary of Labor access to inspect those vehicles, whether or not they are in Arizona.

**IT IS FURTHER ORDERED** that this Temporary Restraining Order is to be in effect through November18, 2022.

**IT IS FURTHER ORDERED** that a hearing on the United States Secretary of

Labor's Motion for Preliminary Injunction is set for November 18, 2022, at 2:00 p.m.[8] The parties shall exchange marked copies of witness lists and exhibits to be used at the hearing no later than November 14, 2022. The parties shall also deliver an original and two copies of their witness list and exhibit list with exhibits to Judge Humetewa's Courtroom Deputy Clerk by November 14, 2022. The parties shall otherwise complete witness lists and number and mark exhibits in accordance with the instructions found in Exhibit Marking Instructions at www.azd.uscourts.gov under Judges' Information; Orders, Forms and Procedures; and Standard Forms Used by All Phoenix Judges. Any witness not disclosed or exhibit not marked and exchanged by November 14, 2022, will be precluded at the hearing. The parties shall eliminate any duplicate witnesses or exhibits.

Dated this 27th day of October, 2022.

*[signature]*

Honorable Diane J. Humetewa
United States District Judge

---

[8] This Order amends the Court's prior Minute Entry at Doc. 16 as to the time of the hearing.